UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| WYATT MOODY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-73-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RENEE BLAIR and NORTH CENTRAL | ) | **MEMORANDUM OPINION** |
| DISTRICT HEALTH DEPARTMENT, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendants' motion for summary Judgment. [Record No. 17] Plaintiff Wyatt Moody alleges that Defendants Renee Blair and North Central District Health Department terminated his employment as a direct result of his successful appeal of the agency's decision to suspend him from employment in 2008. [Record No. 1-2, p. 2] He claims that his termination constituted retaliation for the exercise of his First Amendment right to petition the government for a redress of grievances.[1] The Defendants contend that Moody has failed to establish the elements for a First Amendment retaliation claim. For the reasons discussed below, the Court will grant the Defendants' motion for summary judgment.

---

[1] Although his complaint is unclear regarding whether he seeks to assert a claim of Fourteenth Amendment retaliation [Record No. 1-2, p. 2], Moody's later filings and the statements of his counsel during the pretrial conference clearly indicate that he wishes to proceed on a theory of First Amendment retaliation alone. [Record No. 19, pp. 20-34]

**I.     Background**

This case arises out of the termination of Wyatt Moody's employment at the North Central District Health Department ("NCDHD"). NCDHD is an agency of the Commonwealth of Kentucky. [Record No. 17-2, p. 3] Renee Blair, as director of NCDHD, was responsible for the agency's employment decisions. [*Id.*] Moody served as a Health Environmentalist with NCDHD from 2001 until January 29, 2010. [Record No. 17-2, pp. 4-5] In this position, Moody inspected sewers and conducted site evaluations of proposed septic or sewage systems for residential developments. [Record No. 19, pp. 4-5] During his employment, Moody was subject to several disciplinary actions. In late 2005, he received a "verbal reprimand for conducting site evaluations that had been previously completed by other environmentalists and approving lower cost systems." [Record No. 17-3, p. 3] Then, on November 26, 2007, Moody received a verbal reprimand from a supervisor for conducting a site evaluation without collecting payment. [Record No. 17-4, p. 1]

On December 3, 2008, Moody was "notified, by letter . . . of NCDHD's intent to suspend [him] from employment." [Record No. 17-2, p. 3] In response, he requested an opportunity to appear before Blair to respond to the charges contained in the letter. [Record No. 17-6, p.1] However, after the December 11, 2008 "pre-disciplinary hearing" NCDHD suspended Moody for ten days without pay. [Record No. 17-7, p. 1] Pursuant to the administrative regulations that govern health department employees, Moody exercised his right to appeal his suspension to the Local Health Department Employment Personnel Council ("Personnel Council"). [Record No. 17-8, p. 1 (citing 902 Ky. Admin. Regs. 8:100)] As a result of this appeal, his suspension was

overturned based upon NCDHD's failure to follow the "progressive discipline requirement" contained in the regulations. [Record No. 17-8, p. 3 n.1]

Upon returning to work after his appeal, Moody was reprimanded three times in rapid succession: once on February 10, 2009, again on February 23, 2009, and finally on March 17, 2009. [Record No. 17-3, p. 4] On July 27, 2009, Moody was suspended for fifteen days. [Record No. 17-9] Moody again followed the proper administrative procedures for contesting the suspension, but this time the decision was upheld on appeal. [Record No. 17-10] Moody did not appeal the decision to circuit court, as provided by statute. [Record No. 17-2, pp. 4-5 (citing Ky. Rev. Stat. Ann. § 13B.140)]

Finally, on December 3, 2009, Moody received an "intent to dismiss" letter. [Record No. 19, p. 15] He appealed the decision, which was upheld by the Personnel Council on January 29, 2010. [Record No. 17-11] Again, Moody chose not to appeal the decision to circuit court. [Record No. 17-2, p. 5] Instead, he filed this action against NCDHD and Blair in the Shelby Circuit Court. [Record No. 1-2] The case was removed to this Court on October 28, 2010. [Record No. 1]

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is

not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc., v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Vill. of Oakwood v. State Bank & Trust Co.*, 879 F.2d 1304, 1310 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 251-52).

### III.     Analysis

The Defendants argue that Moody cannot establish a *prima facie* case for First Amendment retaliation. [Record No. 17-2, p. 2]  They assert that this case must be dismissed because Moody did not engage in speech protected by the Constitution.  In the alternative, the Defendants contend that Moody's First Amendment rights were outweighed by the agency's interests in promoting efficiency and safety and that he has otherwise failed to prove the additional elements of his retaliation claim.

The essence of a retaliation claim is that "the plaintiff engaged in conduct protected by the Constitution or statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc).  Thus, the plaintiff must prove three basic elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* at 394.  In the specific context of First Amendment retaliation cases involving public employees, the first element is broken down into two steps.  First, the Court must determine whether the employee engaged in protected activity.  If the answer is no, then there is no cause of action.  If the answer is yes, the Court must then balance the First Amendment interests of the public employee against "the interest of the State, as an employer, in promoting the efficiency

of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

The initial inquiry is a threshold issue because "[a]bsent protected conduct, plaintiffs cannot establish a constitutional violation." *Thaddeus-X*, 175 F.3d at 395. In other words, if the employee engaged in unprotected speech, he "has no First Amendment cause of action based on his . . . employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If Moody cannot establish that his conduct was protected under the First Amendment, his claim must fail.

The critical first step in the Court's analysis is to determine whether Moody engaged in protected conduct when he appealed his 2008 suspension. Whether an activity is protected under the First Amendment depends on context. *Thaddeus-X*, 175 F.3d at 388. When a First Amendment retaliation claim is brought by a public employee against his government employer, the general rule is that the employee must prove that his speech involved a "matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146-47 (1983). The First Amendment protections provided to the public employee in his capacity as a citizen are as broad as those of any privately employed individual; however, when speaking as a public employee, those protections are abrogated. *Garcetti*, 547 U.S. at 418 ("When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."). Therefore, to prove a claim of retaliation under the First Amendment's Speech Clause, a public employee must show that he spoke as a citizen and that his speech addressed a matter of public concern. *Connick*, 461

U.S. at 146. If this is not the case, "it is unnecessary for [the Court] to scrutinize the reasons for [his] discharge." *Id.*

Moody seeks to avoid the application of the "public concern test" by asserting that this case is not a "'regular' free speech claim," but one that implicates the Petition Clause of the First Amendment. [Record No. 19, p. 21] As a result, he argues that the speech at issue need not involve a matter of public concern. [*Id.*, p. 21-23] The Petition Clause protects the "right of the people . . . to petition the government for a redress of grievances." U.S. Const. amend. I. Although historically this clause was intended to protect only those seeking legislative or judicial relief, the right has been extended to petitions of administrative agencies. *See Gable v. Lewis*, 201 F.3d 769, 770-71 (6th Cir. 2000) (citing *Cal. Transp. v. Trucking Unltd.*, 404 U.S. 508, 510 (1972)).

Moody's conduct in this case implicates the Petition Clause of the First Amendment rather than the Free Speech Clause. However, it does not follow from this conclusion that his claim must be analyzed under a different standard than that which is applied in Free Speech cases. The Supreme Court has recently resolved a circuit split on this issue, and concluded that where, as here, a public employee raises a First Amendment retaliation claim based on the Petition Clause, that employee must still show that his speech involved a matter of public concern. *Borough of Duryea, Penn. v. Guarnieri*, 131 S. Ct. 2488, 2491-92 (2011). In other words, a plaintiff cannot reap the benefit of a less stringent standard simply by invoking the Petition Clause. Moody's claims fall squarely within the factual background to *Guarnieri*,

because the alleged retaliation was in response to his appeal to a state administrative body.[2] *See id.* at 2492-93. Based on this authority, the Court rejects Moody's argument and instead applies the "public concern test" to determine whether his appeal constituted protected activity under the First Amendment.

Whether certain employee speech "addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. Traditionally, a "matter of public concern generally involves a matter of political, social, or other concern to the community." *See v. City of Elyria*, 502 F.3d 484, 492 (6th Cir. 2007) (internal citations and quotation marks omitted). Specifically, "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government," constitute matters of public concern. *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001). "A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Guarnieri*, 131 S. Ct. at 2501.

Moody asserts that the "right of public employees to appeal adverse decisions by their employers is historically a matter of public concern." [Record No. 19, p. 23] And while that may be true in a sense, it is not enough to transform Moody's appeal into a "matter of public

---

[2] The Court indicated that the analysis might be different if the case involved "retaliation by a government employer for a public employee's exercise of the right of access to the courts." *Id.* at 2494. However, this case involves only the "seeking of relief from a state administrative agency," so the Court need not consider the implications of this dictum from *Guarnieri*. [Record No. 19, p. 23 (internal quotation marks omitted)]

concern" for First Amendment retaliation purposes. Although "the public may always be interested in how government officers are performing their duties . . . that will not always suffice to show a matter of public concern." *Guarnieri*, 131 S. Ct. at 2501. The right to petition "is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." *Id.* Moody's historical argument that "every public employee's exercise of his state-granted due process right to appeal an adverse employment decision is a matter of public concern," is unpersuasive. [Record no. 19, p. 24]

The administrative appeal of Moody's 2008 suspension constituted a purely internal personnel dispute that did not touch on a matter of public concern. *See Brandenburg*, 253 F.3d at 898. He was suspended for "[i]nefficiency or incompetncy in the performance of a duty and negligence in the performance of a job duty." [Record No. 17-7, pp. 1-2] In response, he followed the agency's administrative procedures to appeal the decision to the Personnel Council. [Record No. 17-8, p. 1] He does not contend that he was using the appeal as a platform to bring concerns about NCDHD to light. Instead, he was merely disputing his disciplinary action as any employee, private or public, would do. *See Cherry v. Pickell*, 188 F. App'x 465, 469 (6th Cir. 2006) (affirming district court's decision that speech was on an internal personnel dispute "because the point of Cherry's speech was not to present his concerns about the overall safety of the courthouse, but rather to complain to a co-worker about a cutback in his overtime hours" (internal quotation marks omitted)). As important as this matter was to him personally, Moody's appeal was simply not an issue which was "needed . . . to enable the members of society to make informed decisions about the operation of their government." *Brandenburg*, 253 F.3d at 898.

Therefore, he has not alleged any facts that would suggest that the administrative appeal of his 2008 suspension was anything more than a matter of personal interest.[3]

In short, Moody's speech did not touch on a matter of public concern. As a result, the public policy principles that guide the First Amendment retaliation line of cases point in favor of granting summary judgment. For instance, the Supreme Court explained the reasoning for its result in *Guarnieri* as follows:

> Unrestrained application of the Petition Clause in the context of government employment would subject a wide range of government operations to invasive judicial superintendence. Employees may file grievances on a variety of employment matters, including . . . discipline . . . and terminations. Every government action in response could present a potential federal constitutional issue. Judges and juries, asked to determine whether the government's actions were in fact retaliatory, would be required to give scrutiny to both the government's response to the grievance and the government's justification for its actions. This would occasion review of a host of collateral matters typically left to the discretion of public officials. Budget priorities, personnel decisions, and substantive policies might all be laid before the jury. This would raise serious federalism and separation-of-powers concerns. It would also consume the time and attention of public officials, burden the exercise of legitimate authority, and blur the lines of accountability between officials and the public.

*Guarnieri* 131 S. Ct. at 2496 (internal citations omitted). Allowing Moody's claims to proceed to trial would result in the type of scrutiny into discretionary administrative matters that the Court sought to avoid through its holding in *Guarnieri*.

Moody has failed to show that he engaged in protected conduct when he appealed his 2008 suspension. As a result, there is no need for the Court to decide whether his speech outweighed the Defendants' interest in "promoting the efficiency of the public service it

---

[3]   The deposition testimony that Moody cites does not support a finding that his appeal was a matter public concern. To the extent that the depositions addressed the appeal, the testimony was primarily directed at issues of causation. [*See* Record Nos. 19-1, 19-2, 19-3, 19-4]

provides." *Pickering*, 391 U.S. at 568.  It is worth noting, however, that the application of this balancing test confirms that Moody's appeal was not protected activity under the First Amendment.  The factors for balancing these competing considerations include considerations of whether the speech at issue

> was likely to foment controversy and disruption; impeded the department's general performance and operation; affected loyalty and confidence necessary to the department's proper functioning; subverted department discipline; was false and the employer could not have easily rebutted or corrected the errors; and was directed toward a person whom the speaker normally contacted within the course of daily work.

*Solomon v. Royal Oak Township*, 842 F.2d 862, 865 (6th Cir. 1988).  As the Defendants point out – and as Moody heartily concedes – these factors are "not easily transposed upon the facts and circumstances in the instant action." [Record No. 17-2, p. 11; Record No. 19, p. 24]  This is because the test was intended to apply only if the conduct at issue was found to be protected. *Solomon*, 842 F.2d at 865.  Because that is not the case, these factors are simply not applicable.

Similarly, as the Defendants correctly note, the Court need not "move on to determining whether the last two elements of a cause of action for retaliation — adverse action and motivation — are present."[4]  [Record No. 17-2, p. 9 (quoting *Brandenburg v. Hous. Auth. of*

---

[4] The Defendants have argued that the doctrine of issue preclusion applies to some of the factual allegations in this case. [Record No. 20, pp. 8-9] Although factual determinations from state administrative proceedings which were sustained by the state court on appeal "may not be relitigated in federal court," issue preclusion alone would not entitle Defendants to summary judgment. *Barnes v. McDowell*, 848 F.2d 725, 732 (6th Cir. 1988) (noting that a plaintiff's guilt as to the underlying facts of his discharge will not necessarily prevent him from prevailing in a retaliatory discharge action).  Instead, it is the "adverse action" element of the First Amendment retaliation analysis where issue preclusion would apply to Defendants' advantage.  If Moody were precluded from relitigating the Personnel Council's findings of fact [*e.g.*, Record Nos. 17-10, 17-11], that would strongly support what Moody calls the Defendants' "'we would have done it anyway' defense." [Record No. 19, p. 32]  However, for the reasons stated above, the Court need not determine whether issue preclusion applies in this case.

*Irvine*, 253 F.3d 891, 898 (6th Cir. 2001))]  Rather, because the evidence is so one-sided regarding the issue of whether Moody's conduct was protected under the First Amendment, the Defendants are entitled to judgment as a matter of law.  *See Anderson*, 477 U.S. at 251-52.

### IV.     Conclusion

Moody has failed to establish a *prima facie* claim and no genuine issue of material fact remains to be resolved herein.  Accordingly, it is hereby

**ORDERED** that the Defendants' Motion for Summary Judgment [Record No. 17] is **GRANTED**.  A separate judgment will be entered this date in favor of Defendants Renee Blair and the North Central District Health Department.

This 21st day of November, 2011.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge